Filed 5/18/15  P. v. Jones CA3
Opinion on remand from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C073559 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF124251) |
| v. | |
| THOMAS JONES IV, | |
| Defendant and Appellant. | |

A jury found defendant Thomas Jones IV guilty of second degree robbery (Pen. Code, § 211),[1] elder abuse (§ 368, subd. (c)(1)), and three counts of unlawfully using tear gas (§ 22810, subd. (g)).  After defendant admitted serving three prior prison terms, the trial court sentenced him to an aggregate term of eight years eight months in state prison.

On appeal, defendant contends it was error to convict him on three counts of unlawfully using tear gas because, although three people were injured by the tear gas, he

---

[1]  Undesignated statutory references are to the Penal Code.

1

only "used" the tear gas once.  Defendant also contends the prosecution committed misconduct in its closing argument.  We conclude two of defendant's convictions for unlawful use of tear gas should be stricken, but defendant has forfeited his claim of prosecutorial misconduct.  We shall modify the judgment accordingly.

## I.

## BACKGROUND

On October 27, 2012, 76-year-old Margaret Ray parked in front of a shopping center and got out of her van, holding her keys and her cane in her right hand and her purse over her left shoulder.  She had between $60 and $80 in her purse.  Defendant rode up to Ray on his bicycle and grabbed the strap of her purse.  Defendant yanked on Ray's purse and the strap slipped down her left arm to her hand; he yanked again and pulled the purse free.  Defendant then "hopped his bike up on a [curb]" and rode away.

As defendant turned the corner of the building, Ray yelled for help.  Three men (Douglas Foster, Andrew Wing, and Shawn McMahon) came out of a nearby Liberty Safes store and chased defendant; Ray called 911.  Ray told dispatch the person who robbed her was a white male in his 20's, wearing yellow shorts and no shirt, and riding a bike.  She said she was not certain but thought he had red hair, which was cut short in a "flattop."

Foster saw defendant on his bike but did not see defendant's face; he ran after defendant.  Wing ran out the back of the store, where he caught up with Foster; they continued to chase defendant together.  McMahon did not want to leave the store unattended and open, so he stayed behind to lock the doors.  He then ran after Foster and Wing.

At some point, defendant ended up at the bottom of a loading bay beside his bike.  When they got to the loading bay, Wing and Foster saw defendant going through his backpack.  Foster did not see a purse, Wing saw defendant put a purse inside his backpack, and another person who was there thought he saw defendant had a gun.

2

Defendant then pulled out a "canister." McMahon had by then gotten to the loading bay, but from a different location than did Foster and Wing.

Defendant started to ride his bike out of the loading bay, riding toward Wing and Foster. McMahon asked Foster and Wing if this was the guy who stole Ray's purse; they said he was. So McMahon dove toward defendant, who was still on his bike. Defendant asked McMahon, "Do you want some of this?" and sprayed McMahon with pepper spray. Defendant then rode away on his bike, dropping the canister on the ground. Foster and Wing ran to help McMahon, and they too felt the effects of the pepper spray.

Numerous police officers responded to Ray's call. They established a perimeter and quickly found defendant hiding behind a wooden post; he appeared to be changing his clothes, putting on dark pants.[2] One of the officers watched as defendant walked from behind the post toward a hotel located on the adjacent property, and 12 minutes after Ray called 911, defendant was detained in a parking lot behind a church. Near the church parking lot was a building with an "alcove." In that alcove, officers found Ray's purse stuffed behind a piece of pipe about seven feet off the ground and a wooden baton leaning against the wall. The officers also found a BMX-type bicycle in the vicinity.

When he was arrested, defendant was wearing dark clothing and carrying a red backpack. Officers searched defendant and his backpack; they found syringes, an empty wallet, $85, a red bandana, a claw hammer, a bicycle pump, other bicycle tools, and a chain. Defendant told the officers his name was "Joseph Wipple." Using a "field show-up," defendant was then separately identified by Ray, McMahon, Foster, and Wing as the man who robbed Ray. McMahon, Foster, and Wing had not washed the pepper spray

---

[2] The officer who saw defendant changing his clothes later testified he did not see the red boxer shorts defendant was wearing when he was booked into the jail. Another officer testified they did not find any clothes in defendant's backpack or in the vicinity of his arrest.

from their faces before the field show-up. Wing and Foster still felt the burning on their faces from the pepper spray, but their vision was not impaired.

After he was booked at the local police station, defendant said to one of the officers, "I did not mean to hurt her." Defendant was later charged with second degree robbery (§§ 211 & 212.5, subd. (c)), abusing or endangering the health of an elderly person under circumstances likely to produce great bodily injury or death (§ 368, subd. (b)(1)), three counts of unlawfully using tear gas (§ 22810, subd. (g)), and one count of falsely identifying himself to a police officer (§ 148.9, subd. (a)). The People also alleged defendant served three prior prison terms within the meaning of section 667.5, subdivision (b).

In closing argument, the prosecution attempted to illustrate the beyond-a-reasonable-doubt standard of proof by revealing in bits and pieces a well-known painting: "Another way of looking at it is enough is enough. Here we have a slide, there's a painting there, it's covered partially by a blue shield. Some of you may right now recognize what that is. Some of you might not. You clearly can't see the whole thing. Maybe some of you will decide you have an abiding conviction that you know what it is when you saw the crossed hands. Maybe some of you will decide you have an abiding conviction when you see the shoulders. Maybe some of you will not decide that you have an abiding conviction until you see the famous smile. But it's going to be different for everybody."[3]

Defendant's theory at trial was that this was a case of mistaken identity. In defense counsel's closing she argued that, although four different people had identified defendant as the man who stole Ray's purse, there were too many inconsistencies in the

---

[3] We presume, based on the description of the iconic image, that the prosecutor was using a reproduction of Leonardo da Vinci's *Mona Lisa*. The image was not admitted into evidence and thus is not part of the record on appeal.

witnesses' testimony about what Ray's assailant was wearing to eliminate reasonable doubt. She argued the field show-up was tainted and it "[defied] common sense" to believe the pepper spray did not affect the vision of McMahon, Wing, and Foster.

Defense counsel further argued it was inconceivable that defendant could have been Ray's attacker because in describing her assailant to law enforcement, Ray failed to mention the "ugly clown" tattooed on defendant's chest. Counsel also offered alternate, "reasonable" explanations for the circumstantial evidence that the prosecutor argued pointed to his guilt: his presence near the crime scene, his decision to run from the police, and the fact the victim's purse was found near him.

In response to the prosecutor's argument, defense counsel said: "[The prosecution] just wants you to ignore all [the conflicting evidence] and say if it walks like a duck and talks like a duck it's a duck. I get it. I get it on paper it looks bad, but it's your job to look at everything that they're trying to use against [defendant] to see if they have proven it to you beyond a reasonable doubt." Defense counsel further argued that before the jury could "consider the reasonable inference from the circumstantial evidence, [they had] to be sure that that reasonable inference has been based on facts proven to you beyond a reasonable doubt."

The jury later found defendant guilty of the lesser included offense of abusing or endangering the health of an elder under circumstances not likely to result in great bodily injury (§ 368, subd. (c)(1)), and guilty on all other charges. Following his conviction, the trial court sentenced defendant to an aggregate term of eight years eight months in state prison. The trial court awarded defendant 161 days of custody credit and ordered him to pay various fines and fees. Defendant appeals.

5

## II.

## DISCUSSION

### A.    Multiple Convictions for Use of Tear Gas

Defendant contends two of his three convictions for the unlawful use of tear gas must be stricken because under the plain language of the statute, the use of tear gas "is not punishable per person injured by the spray but rather per incident," and while he injured three people, he only "used" the spray once. The People agree and we find their analysis persuasive.

Section 22810, subdivision (g)(1) provides in relevant part that "[e]xcept as provided in paragraph (2), any person who *uses* tear gas or any tear gas weapon except in self-defense is guilty of a public offense . . . ." (Italics added.) We agree with the People's interpretation of the statutory language that the "gravamen of the offense" appears to be the "use" of the tear gas itself, not the number of people harmed. Thus, like the brandishing of a weapon (§ 417, subd. (a)(1)), the use of pepper spray is not a crime upon the person but a crime committed in someone's presence. (See *In re Peter F.* (2005) 132 Cal.App.4th 877, 878-879 [brandishing a deadly weapon in the presence of another is not an act of violence upon that person but an act committed in the person's presence].) As such, a single act of using tear gas can only support a single conviction, no matter how many people were injured. (*Ibid.*)

It is undisputed that defendant here only "used" the pepper spray once, when he sprayed it at McMahon. Then he dropped the canister and fled the scene. We conclude that under the plain language of the statute, that single unlawful use of tear gas, which resulted in injuring three people, can give rise to only a single conviction for unlawfully using tear gas.

### B.    Prosecutorial Misconduct

Defendant contends the prosecutor committed misconduct in closing argument by revealing a picture of an iconic image in isolated pieces in order to illustrate the

6

reasonable doubt standard of proof, thus, defendant argues, effectively "diluting" the prosecution's burden of proof.

In seeking a criminal conviction, the prosecution is prohibited from engaging in " ' " 'a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.]' " (*People v. Hill* (1998) 17 Cal.4th 800, 819, quoting *People v. Gionis* (1995) 9 Cal.4th 1196, 1214.) Nonetheless, " '[c]onduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 . . . .)" (*People v. Navarette* (2003) 30 Cal.4th 458, 506.) However, "[a] defendant's conviction will not be reversed for prosecutorial misconduct . . . unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1133 . . . .) Also, a claim of prosecutorial misconduct is not preserved for appeal if defendant fails to object and seek an admonition if an objection and jury admonition would have cured the injury. (*People v. Scott* (1997) 15 Cal.4th 1188, 1217 [(*Scott*)].)" (*People v. Crew* (2003) 31 Cal.4th 822, 839 (*Crew*).)

Here, defendant did not object on any ground to the portion of the prosecutor's closing argument regarding the standard of proof or assert a prosecutorial misconduct claim. On appeal, defendant makes no argument that an admonition would not have cured any harm caused by the purported misconduct. Consequently, defendant failed to preserve the issue of prosecutorial misconduct in misdescribing the requirement of proof beyond a reasonable doubt. (*People v. Centeno* (2014) 60 Cal.4th 659, 674; Crew, *supra*, 31 Cal.4th at p. 839; *Scott*, *supra*, 15 Cal.4th at p. 1217.)

## C. Ineffective Assistance of Counsel

Anticipating that his claim of prosecutorial misconduct would be deemed forfeited by the failure to object at trial, defendant also contends his trial counsel was ineffective

for failing to object. There are two prongs to an ineffective assistance of counsel argument: deficient performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 677-678 [80 L.Ed.2d 674, 687] (*Strickland*).) Without deciding if counsel was deficient in failing to object, there was no prejudice, as we explain below. (*Id.* at p. 697 [80 L.Ed.2d at p. 699] [an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."].)

To prevail on the prejudice prong of an ineffective assistance of counsel challenge, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra*, 466 U.S. at p. 694 [80 L.Ed.2d at p. 698].)

Contrary to defendant's argument on appeal, this was not a close case. Four witnesses separately identified defendant as the man who robbed Ray. Defendant was seen fleeing the scene by three witnesses who then followed him until the police arrived. When he was arrested, defendant was found near the victim's purse, and he had approximately the same amount of cash on him that Ray said was in her purse but his wallet was empty. A bicycle was found near where defendant was arrested, and he was carrying bicycle tools in his backpack. Finally, after he was booked into the jail, defendant told one of the police officers: "I did not mean to hurt her."

On this record, defendant has failed to persuade us that he would have received a different result had counsel objected to the prosecutor's argument.

### III.

### DISPOSITION

Defendant's convictions for the unlawful use of tear gas in counts three and five are hereby stricken. The judgment is otherwise affirmed. The trial court is directed to

8

prepare an amended abstract of judgment and to forward a certified copy of said amended abstract to the Department of Corrections and Rehabilitation.

        RAYE        , P. J.

We concur:

       BLEASE      , J.

      DUARTE     , J.